1
2
3
4
5

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

6
7

8 KEVIN E. FIELDS,                                      CASE NO. 1:09-cv-01868-SKO PC

9                              Plaintiff,               ORDER GRANTING DEFENDANT'S
                                                        MOTION FOR SUMMARY JUDGMENT,
10          v.                                          AND DIRECTING CLERK OF COURT TO
                                                        ENTER JUDGMENT
11 E. BANUELOS,
                                                        (Doc. 31)
12                             Defendant.
                                            /
13

14                   **Order Granting Defendant's Motion for Summary Judgment**

15 **I.      Procedural History**

16          Plaintiff Kevin E. Fields, a state prisoner proceeding pro se and in forma pauperis, filed this

17 civil rights action pursuant to 42 U.S.C. § 1983 on October 23, 2009.  This action for damages is

18 proceeding against Defendant Banuelos for retaliation, in violation of the First Amendment of the

19 United States Constitution. (Docs. 1, 14.)  Plaintiff's claim arises from an incident on June 16, 2006,

20 in which Defendant confiscated his Kool-Aid and then wrote him up for possessing pruno, allegedly

21 in retaliation for refusing the previous day to waive his right to discovery in a pending federal civil

22 action.

23          On September 15, 2011, Defendant filed a motion for summary judgment.[1]  (Doc. 31.)

24 Following various extensions of time, Plaintiff filed an opposition on January 23, 2012,[2] and

25

26          [1] Defendant's request for judicial notice of court records in support of his motion is granted.  (Doc. 32.)

27          [2] The discovery cut-off was December 12, 2011.  Plaintiff filed a motion pursuant to Rule 56(d) of the
Federal Rules of Civil Procedure on October 3, 2011, and it was denied on December 1, 2011.  (Docs. 34, 39.)
Plaintiff was ordered to file an opposition within sixty days.  On the same day, Plaintiff filed a motion to compel.
28 (Doc. 40.)  On July 13, 2012, the Court issued an order granting in part and denying in part Plaintiff's motion to

1  Defendant filed a reply on February 10, 2012. (Docs. 42-44, 47.) Defendant's motion for summary

2  judgment has been submitted upon the record, and the Court now issues the following ruling. Local

3  Rule 230(l).

4  **II.    Summary Judgment Legal Standard**

5          Any party may move for summary judgment, and the Court shall grant summary judgment

6  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

7  to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual

8  Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is

9  disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record,

10 including but not limited to depositions, documents, declarations, or discovery; or (2) showing that

11 the materials cited do not establish the presence or absence of a genuine dispute or that the opposing

12 party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation

13 marks omitted). While the Court may consider other materials in the record not cited to by the

14 parties, it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School

15 Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence at the summary judgment stage,

16 the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v.

17 Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and

18 it must draw all reasonable inferences in the light most favorable to the nonmoving party and

19 determine whether a genuine issue of material fact precludes entry of judgment, Comite de

20 Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011)

21 (quotation marks and citation omitted).

22         Defendant does not bear the burden of proof at trial and in moving for summary judgment,

23 he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities

24 Litigation, 627 F.3d 376, 387 (9th Cir. 2010). "Where [Defendant] has met that burden, the burden

25 then shifts to [Plaintiff] to designate specific facts demonstrating the existence of genuine issues for

26

27 compel, and it re-issued the summary judgment warning notice in accordance with the recent decision in Woods v.
   Carey, 684 F.3d 934, 935-36 (9th Cir. 2012). (Docs. 49, 50.) Plaintiff was provided thirty days within which to file
28 a new opposition, if he so desired. (Doc. 51.) Plaintiff filed a statement of intent to stand by his previously filed
   opposition on July 23, 2012. (Doc. 52.)

1    trial."  In re Oracle, 627 F.3d at 387.  "This burden is not a light one."  Id.  Plaintiff "must show

2    more than the mere existence of a scintilla of evidence."  Id.

3    **III.    Discussion**

4         **A.    Allegations in Verified Complaint**[3]

5         In his complaint, Plaintiff, an inmate confined in the Security Housing Unit (SHU) at

6    California State Prison-Corcoran (Corcoran), alleges that on June 15, 2006, Defendant Banuelos, a

7    correctional officer, approached his cell and told him that his attorney was on the phone and wanted

8    to know if Plaintiff would waive discovery for thirty days while she moved for summary judgment.

9    Plaintiff said he was acting as his own attorney and asked Defendant if he meant that Deputy

10   Attorney General Jennifer Nygaard was on the phone.[4]  Defendant said yes and Plaintiff told him to

11   tell Ms. Nygaard that "hell no," he would not waive discovery for thirty days so she could move for

12   summary judgment.  (Doc. 1, Comp., ¶11.)  Defendant asked Plaintiff why he did not want to waive

13   discovery, and Plaintiff told him it was none of his business and to just tell Ms. Nygaard what

14   Plaintiff said.  Defendant became irate and began making threats and cursing as he walked away.

15        On June 16, 2006, Officers Smith and Contreras came to Plaintiff's cell, told him he had been

16   added on to the nurse's line, and asked if he wanted to go.  Plaintiff told them he did and he was

17   removed from his cell, escorted to the medical clinic, and seen by the nurse.  When Plaintiff returned

18   to his cell, other inmates informed him that Defendant entered his cell as soon as he left, confiscated

19   two six-ounce bags of Kool-Aid, and threw them away in the rotunda trash can.[5]  When Plaintiff was

20   secured in his cell, he told Officers Smith and Contreras to tell Defendant he wanted to speak with

21   him.  They said they would, and Defendant appeared at Plaintiff's cell five minutes later.

22   ///

23

24        [3] Plaintiff's complaint is verified and therefore, it is treated as an opposing declaration to the extent it is
     based on Plaintiff's personal knowledge of specific facts which are admissible in evidence and to which Plaintiff is
25   competent to testify.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Lew v. Kona Hosp., 754 F.2d 1420, 1423
     (9th Cir. 1985).

26        [4] Plaintiff identifies the case as Fields v. Woodford, C-05-0870 CW (PR) (N.D.Cal.).  The Court takes
27   judicial notice that the Fields v. Woodford was dismissed on October 31, 2008, pursuant to the parties' voluntary
     stipulation.

28        [5] Spelled Koolade in the complaint.

Plaintiff asked Defendant why he confiscated Plaintiff's two bags of Kool-Aid in retaliation for refusing to waive his right to discovery, and he told Defendant he would need a cell search slip so he could demonstrate that Defendant conducted a retaliatory cell search, arbitrarily confiscated Plaintiff's Kool-Aid, and threw it away. Defendant told Plaintiff that if he wanted a cell search slip, he was going to write Plaintiff up and say he had pruno in his cell, as that is what he confiscated, not Kool-Aid. Plaintiff told Defendant he wanted a cell search slip and Defendant said he would give Plaintiff a write-up if that was what he wanted. Defendant then turned and walked away.

Approximately ten minutes later, Defendant returned with a copy of a property confiscation slip which stated that two plastic bags were removed because they contained unidentified liquid and smelled of alcohol, and they were disposed of pursuant to institutional procedures. Defendant then again told Plaintiff he would be getting a CDCR 115 Rules Violation Report (RVR). As Defendant was walking away, inmate Isaac Montgomery yelled to Defendant that he had witnessed everything, that he had given Plaintiff the Kool-Aid, and that he would be Plaintiff's witness at the disciplinary hearing. Defendant gave inmate Montgomery the middle finger, said he would bring some cheese later, and called inmate Montgomery a rat.

On June 20, 2006, Officer Counter gave Plaintiff a copy of the RVR, which was authored by Defendant and which charged Plaintiff with the manufacture of alcohol.

Plaintiff denies that there was pruno or any other illegal substance in his cell at any time.

**B.   Undisputed Facts**

1.   Plaintiff is serving two life sentences: one for assault with a deadly weapon and another for assault on a correctional officer. Plaintiff has no release date.

2.   Plaintiff has been housed at Corcoran since December 1, 2000, and on June 15, 2006, he was housed, single-celled, in the SHU 4B1R, cell 50.

3.   Before June 15, 2006, Defendant had little or no interaction with Plaintiff and he showed no animosity toward Plaintiff.

4.   The Fields v. Woodford case concerned prison staff at San Quentin rather than at Corcoran. Defendant was not a party to the Fields v. Woodford case and he knew nothing about the case, including the names of the defendants and whether or not they were correctional officers. Defendant

did not know what the legal terms "discovery," "summary judgment," and "to waive discovery" meant; and he was not aware that Plaintiff had ever sued correctional officers.  Defendant knew nothing about Plaintiff's lawsuits or his litigation history.[6]

5.      Deputy Attorney General Jennifer Nygaard, who was the defendants' counsel in <u>Fields v. Woodford</u>, does not recall if she called the prison on June 15, 2006, but her usual course of practice would be to speak directly to Plaintiff and not through Defendant Banuelos.  Ms. Nygaard's usual course of practice would have been to take notes about the call on a legal pad.  She reviewed her notes in the <u>Fields v. Woodford</u> file, and there is no notation that she called the prison on June 15, 2006.

6.      On November 10, 2005, the court in <u>Fields v. Woodford</u> ordered the defendants to file a motion for summary judgment no later than ninety days from the date the answer was due.  On January, 30, 2006, Plaintiff moved to file a second amended complaint.  Due to Plaintiff's pending motion to amend, on April 3, 2006, the defendants moved for an extension of time to file a dispositive motion.  On May 14, 2006, Plaintiff served his first request for the production of documents on the defendants.  Because Plaintiff's motion to amend was still pending, Ms. Nygaard wrote to Plaintiff requesting that he stipulate to a stay of discovery pending the court's order on his motion to amend.   In the letter, Ms. Nygaard asked Plaintiff to return the signed stipulation immediately if he agreed to its terms, so that she could file it by June 9, 2006.  Plaintiff signed the stipulation on May 29, 2006.  By that time, Ms. Nygaard had already filed the defendants' motion to stay discovery, on May 23, 2006.

_____

[6] Although Plaintiff purports to dispute that Defendant did not know about the <u>Fields v. Woodford</u> case, did not know that Plaintiff sued correctional officers, and did not know of Plaintiff's lawsuits and litigation history, he has not done so with any admissible evidence.  Plaintiff conceded in his deposition that Defendant did not know about the <u>Fields v. Woodford</u> case, but he attempts to bring these facts into dispute by relying on his declaration, in which he attests that after his deposition, he learned from nine staff members, all of whom he names, that the litigation office provides them with a list of inmate suits.  That list is placed in the inmates' CDC 114 unit folders to ensure that inmates are not placed in units with staff they are suing.  Plaintiff asserts that based on this information, Defendant knew about his lawsuit.

First, Plaintiff failed to sign his declaration and it cannot be considered by the Court.  However, notwithstanding that deficiency, the staff members' statements are hearsay and are inadmissible.  Furthermore, Plaintiff's assertion that Defendant knew is a conclusion not supported by any specific facts.  Evidence that lists are made by the litigation office for placement in inmates' files to ensure they are not housed with staff being sued does not establish that a list was made and placed in Plaintiff's CDC 114 folder, that Defendant had access to inmates' CDC 114 folders, and that Defendant accessed Plaintiff's CDC 114 folder and saw the list.

1    The stipulation was received by the court on June 5, 2006, and on June 12, 2006, the court
2    issued the following orders: (1) Plaintiff's motion to file a second amended complaint was granted;
3    (2) the defendants' motion for an extension of time to file a summary judgment was granted; (3)
4    dispositive motions were to be filed within sixty days; and (4) the defendants' request for a stay of
5    discovery pending the court's review of the second amended complaint was denied as moot, and the
6    clerk was ordered not to file the stipulation.

7    The correspondence between Ms. Nygaard and Plaintiff in June and July 2006 does not allude
8    to the alleged conversation regarding waiving discovery and it also indicates that no telephone
9    discussions between them had yet occurred.   Plaintiff's letters do not refer to an incident involving
10   Defendant or the confiscation of his Kool-Aid on June 16, 2006.  On June 26, 2006, ten days after
11   the incident allegedly took place, Plaintiff signed a declaration claiming that prison staff were
12   "denying Plaintiff meaningful access to the courts," yet he did not mention the alleged incident.  On
13   August 11, 2006, Ms. Nygaard filed the defendants' motion for summary judgment.  That day, Ms.
14   Nygaard spoke directly with Plaintiff on the telephone and requested that he stipulate to a stay of
15   discovery until after the court ruled on the defendants' motion for summary judgment.  Plaintiff
16   would not agree to enter into a stipulation to stay discovery.

17   7.    On the morning of June 16, 2006, Defendant was assigned as Floor Officer in Unit 4B1R.

18   8.    Post orders require that the Floor Officer make at least three cell searches a day, per shift, in
19   the housing unit.[7]

20   9.    Defendant decided to search cell 50L because Plaintiff, its sole occupant, was out.  To search
21   an occupied cell, the inmate must first be removed and placed in a holding cage.  If the inmate has
22   something to hide, he may refuse to leave his cell, necessitating extraction by force.  Thus, it is much
23   easier to search an unoccupied cell.

24   10.   Defendant discovered two plastic bags containing a liquid substance.

25   ///

26

27        [7] Although Plaintiff purports to dispute this fact, even if signed, his declaration would provide no basis for
28   inferring that he, as an inmate, has personal knowledge of and is competent to testify as to what is contained in post
     orders for correctional officers.

11.     Inmate possession of pruno, which is inmate manufactured alcohol, is a violation of prison regulations.

12.     Typically, pruno is made in plastic bags because they are easy to hide and they allow for expansion during fermentation.

13.     Administrative Segregation (Ad-Seg) and SHU inmates are not allowed to possess plastic bags.

14.     Inmates do not prepare Kool-Aid or Crystal Light in plastic bags.[8]

15.     Defendant confiscated Plaintiff's plastic bags and dumped the contents of the bags into the staff restroom toilet.

16.     Defendant wrote an RVR against Plaintiff for possession of pruno.

17.     A disciplinary hearing was held and Plaintiff was found guilty. Later, the matter was re-heard on October 29, 2006, and the RVR was ordered: "Dismissed in the interest of justice-not heard in a timely fashion. Ordered re-heard on 9/27/06."

18.     Since June 15, 2006, Plaintiff has filed fourteen lawsuits in the United States District Court, Eastern District of California. Plaintiff alleges retaliation in nearly all of them.

> ## C.     Plaintiff's First Amendment Retaliation Claim

> ### 1.     Legal Standard

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Under section 1983, Plaintiff must demonstrate a link between the actions or omissions of the defendant and the violation of his rights; there is no *respondeat superior* liability under section 1983. Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct. 1937 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

---

[8] Although Plaintiff purports to dispute this fact and he cites to his declaration, the declaration contains no facts or citations to other evidence which would bring this fact into dispute, and the declaration's lack of signature notwithstanding.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva v. Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

### 2.    Defendant's Position

Defendant argues that he is entitled to summary judgment because his actions were not motivated by Plaintiff's engagement in protected conduct and his actions reasonably advanced a legitimate correctional goal.[9]

### a.    Motive

Defendant contends that Plaintiff cannot demonstrate the requisite "but for" link between protected conduct and the adverse action taken against him.

Prior to June 15, 2006, Defendant had little or no interaction with Plaintiff and he showed no animosity toward Plaintiff.  (Undisputed Fact 3.)  In his declaration, Defendant attested that he does not recall the June 15, 2006, conversation alleged in the complaint nor does he recall being the intermediary in a telephone conversation between Ms. Nygaard and an inmate; and it is undisputed that the Fields v. Woodford case concerned prison staff at a different institution, Defendant was not a party to the suit, and he knew nothing about the case.  (Doc. 31-3, Banuelos Dec., ¶2; U.F. 4.)  It is also undisputed that Defendant did not know the meaning of the terms "discovery," "summary judgment," and "to waive discovery," he was not aware that Plaintiff had ever sued correctional officers, and he knew nothing about Plaintiff's lawsuits or his litigation history.  (U.F. 4.)

Defendant submits evidence that Ms. Nygaard does not recall if she called the prison that day, but her usual course of action would have been to speak to Plaintiff directly and take notes about the

---

[9] The elements of adverse action and chilling are not at issue, and there is no dispute that engagement in court litigation is protected conduct.

8

1   call on a legal pad; her file notes for the <u>Fields v. Woodford</u> case include no notation that a phone

2   call was made on June 15, 2006.  (Doc. 31-5, Nygaard Dec., ¶6; U.F. 5.)

3        Defendant argues that the undisputed facts regarding events which transpired in the <u>Fields</u>

4   <u>v. Woodford</u> case also belie Plaintiff's claim that any request to waive discovery occurred on June

5   15, 2006.  The correspondence between Plaintiff and Ms. Nygaard in June and July 2006 makes no

6   mention of a telephone conversation and contains no complaint by Plaintiff of the events now at

7   issue in this action; and it was on August 11, 2006, that Ms. Nygaard filed the defendants' motion

8   for summary judgment and spoke directly with Plaintiff on the telephone to request that he stipulate

9   to a stay of discovery, a request to which he did not agree.  (U.F. 6.)

10       Further, Defendant argues that as he knew nothing of the <u>Fields v. Woodford</u> case, even

11  assuming the conversation took place, he would have lacked a retaliatory motive in as much as he

12  had no understanding of the nature and consequences of Plaintiff's refusal to waive discovery.

13       Finally, Defendant submits evidence that Plaintiff testified in his deposition that he accused

14  Defendant of lying to him, told Defendant to tell Ms. Nygaard "hell no," and told Defendant it was

15  none of his "fucking business;" and Plaintiff testified that Defendant was irate because of the way

16  Plaintiff spoke to him.  (Doc. 31-6, courts record pp. 16-17, depo. tx. 26:17-25 & 27:3-10.)

17  Defendant argues that if there was any motivation to retaliate against Plaintiff, it arose from

18  Plaintiff's foul, disrespectful language rather from than from the exercise of Plaintiff's protected

19  right to litigate in court.

20                    **b.    Advancement of Legitimate Correctional Goal**

21       Defendant denies that he searched Plaintiff's cell to retaliate against him, and argues that the

22  cell search and resulting disciplinary measures reasonably advanced a legitimate correctional goal.

23  (Banuelos Dec., ¶4.)

24       Floor officers are to make at least three cell searches a day, per shift, and it is easier to search

25  unoccupied cells.  (U.F. 8.)  Defendant chose to search Plaintiff's cell on June 16, 2006, because

26  Plaintiff, the sole occupant, was out of his cell at the time.  (U.F. 9.)

27  ///

28

During the cell search, Defendant discovered two plastic bags containing a red substance in the left front cubicle secreted behind a medical appliance. (Banuelos Dec., ¶5.) Staff receive training on the look and the distinctive smell of pruno, in addition to the places inmates typically hide pruno; and Defendant knew from experience that the substance he found, which had a cloudy appearance and smelled of alcohol, was pruno. (Banuelos Dec., ¶5; Doc. 31-4, Smith Dec., ¶2.) Inmates are not allowed to possess pruno, and ad-seg and SHU inmates are not allowed to possess plastic bags, as pruno is typically made in plastic bags because they are easy to hide and they allow for expansion during fermentation, and plastic bags can be melted down and made into weapons. (U.F. 11-13; Smith Dec., ¶2.)

Defendant confiscated the bags of pruno and dumped the contents into the staff restroom toilet. (U.F. 15; Banuelos Dec., ¶7.) Defendant then wrote Plaintiff an RVR for possession of pruno. (U.F. 16.) Plaintiff was found guilty, but the matter was order re-heard and at that time, it was dismissed in the interest of justice because it was not reheard in a timely manner. (U.F. 17.)

Although Plaintiff alleges that the liquid in the bags was Kool-Aid, it is undisputed that inmates do not prepare Kool-Aid or Crystal Light in plastic bags, and Defendant submits evidence that Kool-Aid is not for sale to SHU inmates. (U.F. 14; Smith Dec., ¶3.) While Crystal Light is available in the canteen, it is sold in small individual plastic packets the size of a coffee creamer. (Smith Dec., ¶3.) Housing staff open the packets, pour them into white paper cups with lids, and hand the cups to the inmates, who then mix the individual serving with water. (Id.) This prevents inmates from possessing material which can be melted down and made into weapons. (Id.)

Defendant argues that inmate health and safety are legitimate correctional goals, as are the preservation of internal order and discipline, and that Plaintiff cannot show the absence of a legitimate correctional goal stemming from the cell search, confiscation of pruno, and issuance of an RVR. Cell searches are both mandated and frequent in the SHU, and both pruno and plastic bags are contraband items.

1

       **3.**    <u>**Plaintiff's Position**</u>[10]

2           Plaintiff's position in opposition to Defendant's motion is that the conversation in fact

3 occurred as alleged in his complaint, which is verified and the summary of which is set forth in

4 section III A. (Doc. 42, Opp., pp. 2-3; Comp., ¶¶9-13.) Plaintiff argues that Defendant became irate

5 after being told that it was none of his "fucking business" why Plaintiff did not want to waive

6 discovery, and he walked away cursing and making threats. (Opp., p. 3; Comp., ¶¶14-15.) Plaintiff

7 argues that when he was out of his cell for the nurse's line, Defendant conducted a retaliatory cell

8 search, arbitrarily confiscated Plaintiff's two six-ounce bags of Kool-Aid, and threw them away.

9 (Comp., ¶¶17, 19.) Plaintiff stated he would need a cell search receipt so he could demonstrate how

10 Defendant conducted a retaliatory cell search, arbitrarily confiscated Plaintiff's Kool-Aid, and threw

11 it away. (<u>Id.</u>, ¶19.) Defendant told Plaintiff that if he wanted a cell search receipt, Defendant was

12 going to write him up and say Plaintiff had pruno in his cell; "[t]hat was what he confiscated and not

13 Koolade." (<u>Id.</u>, ¶20.) When Plaintiff reiterated he wanted a receipt, Defendant said, "OK, I'll give

14 you a write-up if that's what you want." (<u>Id.</u>, ¶21.)

15          Defendant then gave Plaintiff a copy of the receipt, which stated that "two (2) plastic bags

16 were removed because: bags contained unidentified liquid substance, had strong odor of alcohol.

17 Disposed of per institutional procedures," and told Plaintiff he would be getting an RVR. (<u>Id.</u>, ¶22.)

18 On June 20, 2006, Plaintiff was given an RVR accusing Plaintiff of possessing inmate manufactured

19 alcohol. (<u>Id.</u>, ¶25.) Plaintiff denies he had pruno or any other illegal substance in his cell. (<u>Id.</u>, ¶26.)

20          In addition to the allegations in his verified complaint, Plaintiff submits evidence that

21 Defendant did not have a supervisor come to Plaintiff's cell to verify the location and contents of the

22 bags, and a supervisor did not confirm that the liquid substance was pruno, which is the procedure

23 to be utilized in determining whether an inmate has pruno. (Doc. 43, Ex. 2, court record p. 19,

24 ///

25 ///

26

27        [10] Unlike Plaintiff's complaint, Plaintiff's opposition is not verified, and Plaintiff neglected to sign his declaration.  However, Plaintiff submits documentary evidence and as previously set forth, Plaintiff's declaration

28 would not have sufficed to bring any of the facts in section III C into dispute even if it had been signed.

1    Banuelos ROG 6; Ex. 3, court record p. 23, Banuelos RFA 4; Ex.4, court record p. 40, Banuelos

2    ROGs 12, 13.)[11]

3         In conclusion, Plaintiff contends in his opposition that Defendant retaliated against him for

4    refusing to waive discovery and for telling him it was none of his "fucking business" why he did not

5    want to waive his discovery, and Plaintiff denies that there were plastic bags containing a red cloudy

6    substance smelling of alcohol secreted behind a medical appliance in his cell.  (Opp., pp. 4-5.)

7    Plaintiff argues that the parties contradict one another regarding whether Defendant "confiscated

8    [his] Kool-Aid and issued him a Serious Rules Violation Report for possession of pruno in

9    retaliation against him for his litigation activities," and because the Court cannot weigh the evidence

10   or assess the credibility of evidence on summary judgment, Plaintiff need only raise a genuine issue

11   of material fact, which he has done.  (Id.)

12        **4.   Findings**

13             **a.   Motive**

14        Plaintiff's claim is premised on retaliatory conduct taken against him because of his litigation

15   activities and, in particular, his refusal to waive discovery as requested by defense counsel in Fields

16   v. Woodford.  Plaintiff has a protected right under the First Amendment to pursue civil rights

17   litigation in federal court.  Silva, 658 F.3d at 1104.  However, Plaintiff must show that his litigation

18   activities vis a vis his refusal to waive discovery in Fields v. Woodford was the substantial or

19   motivating factor in Defendant's decision to confiscate his plastic bags of liquid, throw them away,

20   and write him up for possession of pruno.  Brodheim, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing

21   Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)).  In this Circuit, Plaintiff

22   need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him,

23   presents a genuine issue of material fact as to" Defendant's motivation.  Brodheim, 584 F.3d at 1271

24   (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted).  This

25   requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general

26

27        [11] Page 6 of Defendant's response to the ROGs is missing from Plaintiff's Exhibit 4, but it was located
     elsewhere in the record at court record p. 97, document 40 and reviewed by the Court.

28

types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendant for the adverse action were false and pretextual.  McCollum v. California Department of Corrections and Rehabilitation, 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).

Direct evidence of improper motive is only rarely available, and this case presents no exception.  Watison, 668 F.3d at 1114; Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999).  Thus, the inquiry is whether Plaintiff has presented sufficient circumstantial evidence to raise a triable issue of fact.

The uncontroverted evidence shows that prior to June 15, 2006, Plaintiff and Defendant had little or no interaction with one another and there existed no animosity.  Further, Defendant was unaware of the Fields v. Woods case; he was unaware of Plaintiff's litigation history, including that Plaintiff sued correctional officers; and he did not know the meaning of the legal terms "discovery," "summary judgment," and "to waive discovery."

Although Defendant denies that a conversation occurred on June 15, 2006, and he has submitted evidence indicating that Plaintiff's refusal to waive discovery in the case came months later, the Court must accept Plaintiff's version of events on that issue.  Plaintiff's version involves Plaintiff saying "hell no" he was not going to waive discovery and telling Defendant it was not any of his "fucking business" why Plaintiff was not waiving time.  Plaintiff alleges in his complaint that Defendant walked away threatening and cursing him; and in his deposition, Plaintiff testified that Defendant said something like, "Mother fucker, we will see," and mumbled, that Defendant was irate because of the way Plaintiff spoke to him, and that Defendant retaliated against him because he told Defendant "it was none of his fucking business."

Finally, the uncontroverted evidence shows that floor officers in the SHU are required to conduct multiple daily cell searches; it is easier to search an unoccupied cell; on June 16, 2006, Plaintiff, who was the sole occupant of the cell, was gone for a medical appointment; and that plastic

bags are contraband, they are used to make pruno, and inmates do not make Kool-Aid or Crystal Light in plastic bags.

Timing can be considered as circumstantial evidence of retaliatory intent, and in this case, the cell search which led to the confiscation at issue occurred only one day after the conversation where Plaintiff refused to waive discovery.  However, Plaintiff has shown little else beyond timing; there are no additional surrounding circumstances supporting the existence of a retaliatory motive. Vasquez v. County of Los Angeles, 349 F.3d 634, 646 (9th Cir. 2004); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995).  While the Court may not weigh conflicting evidence or assess the credibility of the witnesses, the evidence favoring Plaintiff must be sufficient for a jury to return a verdict in his favor; evidence which is merely colorable or is not significantly probative will not suffice.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986); T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-32 (9th Cir. 1987).

There is no evidence that Defendant expressed opposition to the Plaintiff's litigation or litigation in general, and there is no other evidence that the reasons proffered by Defendant for the search and confiscation were false and pretextual.  McCollum, 647 F.3d at 882.  Given Defendant's complete lack of knowledge of Plaintiff's litigation history and his lack of knowledge of litigation terms in general, and the evidence that Defendant was angered by the disrespectful manner in which Plaintiff spoke to him rather than because Plaintiff refused to waive discovery, the Court finds that the timing of the confiscation of the bags and the fact that the subject matter of the relayed request merely involved litigation are insufficient to support a reasonable inference that the cell search was substantially motived by Plaintiff's engagement in litigation.[12]  See McCollum, 647 F.3d at 882 (mere knowledge of a lawsuit with no direct evidence and no circumstantial evidence is insufficient to raise triable issue of fact as to motive); Brodheim, 584 F.3d at 1271 (no entitlement to summary

[12] Although Defendant also addresses the possibility of a claim premised on the use of foul, disrespectful language and argues that such language is not protected conduct, the Court declines to reach that argument.  In his complaint, Plaintiff clearly articulates his claim as premised on his refusal to waive discovery in the Fields v. Woodford case.  To the extent that there is any room for reasonable argument to the contrary, the Court in any event finds that the confiscation and write-up were motivated by legitimate correctional goals and Defendant is entitled to judgment on that ground.

1    judgment where, in part, it was undisputed that prison official's warning to inmate was motivated

2    by the inmate's engagement in protected conduct); <u>Bruce</u>, 351 F.3d at 1289 (suspect timing, the use

3    of stale evidence against the inmate, and statements by gang investigator that the inmate's complaints

4    and protests had angered higher-ups raised triable issue of fact as to motive); <u>Hines v. Gomez</u>, 108

5    F.3d 265, 268 (9th Cir. 1997) (evidence of inmate's reputation for complaining and whining and

6    evidence that on the morning of the event in question, the inmate threatened the defendant with a

7    grievance were sufficient to support finding of retaliatory motive); <u>Pratt</u>, 65 F.3d at 808

8    (circumstantial evidence of timing between protected conduct and adverse action insufficient to raise

9    triable issue of fact where little else supported inference of improper motive).  Accordingly, the

10   Court finds that Plaintiff has not met his burden of putting forth sufficient evidence to raise a triable

11   issue of fact as to motive.

12                          **b.      Legitimate Correctional Goal**

13          The Court must "'afford appropriate deference and flexibility to prison officials in the

14   evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory.'" <u>Pratt</u>,

15   65 F.3d at 807 (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482, 115 S.Ct. 2293 (1995)).  Retaliation

16   claims should be evaluated in light of the oft-stated "'disapproval of excessive judicial involvement

17   in day-to-day prison management, which often squanders judicial resources with little offsetting

18   benefit to anyone.'" <u>Id.</u> (quoting <u>Sandin</u>, 515 U.S. at 482).  Thus, the burden is on Plaintiff to show

19   "that there were no legitimate correctional purposes motivating the actions he complains of." <u>Id.</u> at

20   808.

21          Accepting as true Plaintiff's assertion that his two six-ounce bags contained Kool-Aid rather

22   than pruno, he was nonetheless admittedly in possession of contraband known to be used for making

23   pruno.  Plaintiff does not dispute that SHU inmates are not allowed to possess plastic bags; that

24   pruno is typically made in plastic bags because they are easy to hide and they allow for expansion

25   during fermentation; or that inmates do not prepare Kool-Aid or Crystal Light in plastic bags.

26   Although Plaintiff denies that the substance was pruno or that it was red, cloudy, and smelled of

27   alcohol, he provides no alternate description and he offers no explanation which would suggest a

28

                                              15

1  lawful possession of Kool-Aid in plastic bags when (1) he is not allowed to have plastic bags, (2)

2  the canteen does not sell Kool-Aid, and (3) although the canteen sells Crystal Light, it is in one-

3  serving containers.

4        Institutional security is unquestionably a legitimate correctional goal, <u>Nevada Dept. of</u>

5  <u>Corrections v. Greene</u>, 648 F.3d 1014, 1018 (9th Cir. 2011); <u>Schroeder v. McDonald</u>, 55 F.3d 454,

6  461 (9th Cir. 1995), and Plaintiff was in possession of contraband known for being used to make

7  pruno and which he had no right to possess as a SHU inmate.  The factual dispute over whether the

8  contraband bags contained pruno or something else is not material given that the liquid-filled bags

9  were contraband either way.

10        Likewise, while Defendant did not dispose of the liquid in accordance with the prison rules,

11  his failure to summon a supervisor to the scene does not raise a material issue of fact, as Plaintiff

12  does not dispute having two six-ounce bags of liquid in his cell and the bags were contraband.

13        In sum, Plaintiff has not shown that the confiscation of his liquid-filled bags and the ensuing

14  write-up failed to reasonably advance a legitimate penological purpose.  Plaintiff had no right to

15  possess the contraband bags in question, and here, the link between the possession of contraband and

16  the subsequent discipline meted out - confiscation and the issuance of an RVR - is not attenuated or

17  otherwise weak.  <u>Cf.</u>  <u>Brodheim</u>, 584 F.3d at 1272-73 (adverse action insufficiently related to

18  proffered legitimate penological purpose); <u>Bruce</u>, 551 F.3d at 1289-90 (a general justification for a

19  neutral process does not suffice to defeat a claim).  Accordingly, Defendant's actions reasonably

20  advanced a legitimate penological goal and he is entitled to judgment as a matter of law as a result.

21  **IV.**   **<u>Order</u>**

22        For the reasons set forth above, the Court finds that Defendant is entitled to judgment as a

23  matter of law on Plaintiff's First Amendment retaliation claim and it is HEREBY ORDERED that:[13]

24        1.     Defendant's motion for summary judgment, filed on September 15, 2011, is

25             GRANTED; and

26

27        [13] The Court does not reach Defendant's argument that he is entitled to qualified immunity in light of this

28  finding.

16

2.      The Clerk of the Court is DIRECTED to enter judgment for Defendant and against

Plaintiff.

IT IS SO ORDERED.

**Dated:**     **September 16, 2012**                    /s/ **Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE

17